Case number 20-1235 Stephen C. Finberg petitioner v. United States Department of Agriculture and United States of America. Mr. Diaz for the petitioner, Mr. Spicknall for the respondents. Good morning, counsel. Morning, your honors. Lou Diaz appearing on behalf of the petitioner Stephen C. Finberg. May it please the court. Petitioner requests the court to reverse USDA's finding Mr. Finberg responsibly connected to Adams Produce because petitioner was not actively involved in the activities resulting in the violation and because USDA has determined that Adams Produce was the alter ego of Scott Grinstead, the CEO and owner of Adams Produce at the time of the violations. PACA's responsibly connected provision affords owners, officers, and directors of a PACA violator to avoid the harsh employment restrictions imposed by the statute if they can satisfy a two-pronged test. The first prong is they must show that they were not actively involved in the activities resulting in the specific violation. The second prong requires them to either show that they were a nominal officer and director or they were not the owner of the PACA violator and the PACA violator was the alter ego of somebody else. In this case, the violation in question was the failure to pay 1.9 million dollars to produce suppliers of Adams. Which happened because the company spiraled downward and went into bankruptcy and couldn't pay suppliers, right? Yes, your honor. Actually, that happened because the bank pulled a letter of credit because there were reports of mismanagement and an investigation of fraud on the Department of Defense, correct? No, there is no evidence that swept the funds. The ALJ and the judicial officer concluded that there were four main factors that caused the downfall of Adams. The first one being Mr. Grinstead's falsification of financial records to get a capital infusion from CIC in the amount of 7.5 million. The second was Mr. Grinstead's embezzlement, theft, and fraud to enrich himself personally in the amount of 400,000 dollars. The third was the negligence of the auditing company to uncover Mr. Grinstead's fraud of the financial records. And then the fourth was the sweeping of the bank account by PNC Bank of monies that were specifically earmarked to pay the PACA trust creditors. There's no evidence that Mr. Finberg was involved in any of those four activities. There's no, but there's testimony that one of the reasons people started to lose faith in this company was a DOJ investigation of a DOD fraud. There is no evidence, your honor, that indicates that the DOJ fraud or the failure to disclose the DOD fraud was the result of the downfall of Adams. There is absolutely no evidence. In fact, the DOD fraud was the subject of a whistleblower complaint approximately one year before Mr. Finberg became aware of the DOD fraud. Mr. Finberg was not charged with being complicit with the DOD fraud. He was only charged with misprisonment of felony for failure to report the DOD fraud to the federal authorities. When he learned of the fraud, he went to his superior, Mr. Grinstead, and told him about what was going on. His failure was not to report it to the federal authorities. Here we have a violation, which is failure to pay produce suppliers. In this case, there is no nexus. The department has not provided any substantial evidence to show that there was a nexus or any direct causal link between the failure to report the DOD fraud and the failure to pay produce suppliers. The judicial officer basically just said, you know, the misprisonment of felony was basically just the general downfall of Adams, or because Mr. Finberg didn't report it, it allowed the DOD. I take your point that there are other causes here. There were other frauds in which Finberg was not involved, and maybe they're sufficiently distinct that you just you think of them as different activities, but the DOD, there was testimony that the DOD fraud was one significant piece of the company's downfall. Well, there was there's testimony that there was negative publicity, but that was offset by other testimony that said that Adams was functioning and functioning well before the sweep of the account. If the evidence is conflicting, then there's substantial evidence to support the determination. There is absolutely no substantial evidence to that the failure to report the fraud caused the downfall of, caused the failure to pay the produce suppliers. In this case, you have, the department could have. In terms of his involvement, you have the what he pleaded guilty to, which is undisputed. Also in the record is the indictment, which says that he was actively involved in concocting the fraud from the outset. Can we consider that? And if we can consider that, he's not just a passive observer. He is actively involved in a fraud that results in the specifically pled guilty to misprison of felony. He did not plead guilty to being complicit in the felony of that was going on. All he committed, all he pled guilty to was failure to report the actual violation. But the right, but the indictment is evidence in this administrative record. It charges him with more than that. And it's his burden in this to disprove his involvement. But the facts of the indictment were never proved in a court of law. It's merely just an indictment. It can't be used against Mr. Finberg because there was no trial to prove what the facts of the indictment were true. He merely pled guilty to failing to report the fraud to the department of justice. Again, you have to look at all the facts here in this case found Mr. Grinstead was the alter ego of Adams. He was the bad actor, but USDA says, Mr. Finberg, I'm sorry. You're not entitled to use that finding or the alter ego defense because you, unlike the CIC directors didn't put personal money into the business. You didn't help root out the wrongdoing and you're not an innocent party. However, the standard doesn't require an examination of the petitioner's conduct. It doesn't require him to put money into the corporation to assert the alter ego defense. In this case, Grinstead was the alter ego of Adams. He was found to be the alter ego of Adams. And therefore, Mr. Finberg is satisfied both of these problems. I will reserve the rest of my time for rebuttal. All right. Thank you, counsel. Counsel for respondent. As may it please the court. My name is Charles Spicknall. I'm here on behalf of the U.S. Department of Agriculture in the United States. I'll start with my opponent's arguments about active involvement. He says there's no evidence linking the criminal activities that Petitioner Finberg participated in, which specifically was a fraud against the United States, to the downfall of Adams and the resulting prompt payment violations of the PACA. That's wrong. There is. I mean, first of all, the government did not start investigating Adams because of any of these other activities, because Grinstead was putting personal expenses on his credit card or because he made the outside investment firm pay too much. Get to the point on that. The question of causation, whether he. Is responsible for the hour was part of the causation of the acts for which the proceeding is held. Sorry, your honor. Yes, the the two directors who were on the special committee that was formed to respond to the fraud were the first to testify at the administrative hearing. They said the fraud against the government and the government's investigation was significant for four reasons. First, the government. First, the company hired Fulbright Jaworski to represent them. They incurred millions of dollars in legal expenses. Second, Adams lost business, not only government. I'm sorry, just on that point. I thought the outside directors paid. Hey, not Adams. Well, they were very specific. They did say that at the hearing, but they cleared that up. Mr. Johnson did. He was one of the directors. Technically, those expenses by the company and they invested in Adams an additional two million dollars to help pay those costs and the legal fees and to see that some of the PACA. So how does that then become a cause of this nonpayment for which this proceeding is brought? Well, I mean, the company incurred the funds. The fact that the, you know, outside parties wanted to save the company and put funds into the company. How did the activities of Mr. Feinberg cause the nonpayment? Well, with regard to the investment that we're talking about now, at the end of the day, the company went bankrupt. The money they put in wasn't enough to satisfy, you know, the company's obligations. It went bankrupt and it left 1.9 million in produce debts unpaid, which is a violation of the PACA. I mean, the problem is you have you have a lot of bad things swirling around here. You have at least three different fraudulent schemes. You have a somewhat attenuated theory of causation because the PACA violation has nothing to do with the fraud on DOD. Right. So he's in he's involved in defrauding DOD, which in the short term is going to make the company more able to pay its other debts because they're having more money come in than they otherwise should. And then things go bad. And we're trying to figure out, is it one of Grinstead's frauds? Is it another? What's going on here? You have a pretty short time frame between when we know DOJ to be investigating and when the company fails and just nothing in the administrative orders analyzing the causation question. It's just pure ipsedixit. Well, I mean, I think the problem is, you know, I'm not sure that this was front and center when the J.O. wrote her opinion. And I think there is substantial evidence. I don't think that it's you know, I think there is ample evidence now that the issue has been raised. I don't think you can say the judicial officer missed something in the record that makes her opinion arbitrary and capricious. And that's because not only did they incur legal expenses, they lost business, but they also lost outside investment. So they couldn't get enough money to save. And they also lost the bank financing. Do you think it's enough to meet the causation requirement of this proceeding that he closed his eyes to something else that cost the company money? Isn't that an awfully broad interpretation, counsel? I don't think so. It's clearly one of the activities that brought down the company that left the produce payers unpaid. As Judge Katz says, there was three of them. You know, there were personal expenses, there was inflating the profits of the company, and there was this. Anything that shows they would have paid this stuff for which they had a non-payment if it hadn't meant for what he did? I'm sorry, I missed your question. It's a butt far question. Is there anything in the record that shows the company would have paid these bills for which they made a non-payment had he not done what he did in covering up the other fraud? Well, I think there is. The directors very clearly testified that at some point they discovered what the government was investigating. And they went to the bank, PNC Bank, their lender, and they said, look, here's what we know. Employees and officers within the company have been defrauding the government. And we also had this internal fraud where Grinstead was inflating the receivables. So they told the bank about both. And that was the pivotal event because the bank. This proceeding, though, is not about either one of those, is it? It's about the non-payment, right? That's right. But, you know. And I'm not hearing you answer my question as to what is it in the record that says they would have paid, they would not have incurred this non-payment, but for something that Mr. Feinberg did. Well, I mean, I think it is linked because when they told the bank about the fraud, the bank withdrew the company's line of credit. And the director said very clearly that was it. We were dead in the water without new investment and without a line of credit. We couldn't operate. Therefore, the company couldn't pay the PACA suppliers. So I guess the bottom line question in one sense is, was the judicial officer's opinion sufficiently specific on causation? Well, I don't think that's the issue. I think, you know, even if she wasn't. Well, at one point, I think that the bottom line question is, was the judicial officer's opinion that there were lots of things going on that some findings that were made in the related proceeding seemed contrary to the implication of the decision here. But as your brief points out, there's all this other evidence. But that's not what the judicial officer cited or even referred to. Right. But the judicial officer was affirming the ALJ, the administrative law judge's decision, and she affirmed findings of facts and cited back to that decision. The ALJ decision was equally perfunctory on this point. Yeah. That didn't get you anywhere. All right. I mean, again, I think there's substantial evidence to show that this was one of the causes, one of the activities. I have to ask you also about the alter ego question. How could the miscreant be an alter ego with the company in the proceedings after three other people, but not be an alter ego in this one? Either he was an alter ego or he wasn't an alter ego, or the company was an alter ego, wasn't an alter ego, wasn't it? How does it come out with two different answers to that question? Well, I think that the standard for alter ego is Quinn, and we also cite Vejda as- Give me the standard. Okay. The standard is not only do you have to have a dominant owner, which Grinstead was found to be in the prior proceeding, but you also have to show an injustice. And he can't show that injustice because he participated- Isn't that two different questions? It is two different questions, but that's clearly part of the test in Quinn, and Vejda Mix makes that very clear. This court's decision in Vejda Mix, which we cite in our proof, as does the circuit's decision in Pupil-L, although clearly that's not mine. So it's not just whether there's a potential dominant owner, it's whether there's an corporate form aside to let someone who's really an officer go because we're going to ignore the fact they're an officer because it's an injustice that we're trying to prevent. And in this case, there is no injustice. He was a participant in the fraud against the government, which clearly had significant financial consequences for the company and ultimately for its suppliers. So since the statute has a presumption that places the burden of rebutting it to the- Mr. Finberg here. Does that reduce the obligation of the agency to demonstrate a but-for causation? Yes, I think that's true. I think in this case, for example, he said, we don't know exactly why PNC Bank withdrew the line of credit and swept the accounts. Well, it was after the company reported both frauds to them. He could have called someone, it was his burden. If he wanted to say, PNC withdrew the line of credit, the decision had nothing to do with the fraud against the government, he could have called PNC Bank. He also had a right to cross-examine the directors at the hearing. So when they said all this, he could have, if he wanted to winnow out this point, that there was no connection between the fraud he participated in and ultimately the company's collapse, he had ample time to cross-examine the witnesses. I'm sorry, Your Honors, I see I'm out of time. I'd be happy to continue. So- Sorry, go ahead. If the agency itself in its decision has not demonstrated a but-for beyond the presumption in the statute, it doesn't matter? Right, it's his- I'm sorry to cut you off. I'm trying to understand. It's like the prosecutor issues an indictment, but when put to its burden of proof, can't prove it. And you don't- the defendant can't be convicted. And I understand there's no burden there, but I'm just trying to understand how this statute works. Is it enough to say, look, Adams couldn't pay its suppliers, and anybody who's an official in the company who can't prove the two elements is necessarily implicated? Yes, that is our position. That is what the statute says. Even taking that position, hasn't the evidence demonstrated that there was not any direct connection between his- direct connection between his actions and the particular default for which this proceeding is brought? That's the only way you can prove a negative, is that you establish the weakness of the evidence for the positive. He's not going to have something ever that's going to be direct evidence of a negative. So why isn't this, in this case, a failure of that element? Well, I don't think he has to have direct evidence of a negative. I think when the directors testified that they reported this fraud and the internal fraud to the bank, and the bank pulled the line of credit, which put the company dead in the water, I think he needed to ask, you know, are you sure? You know, have someone explain- You don't leave much meaning in this statute if it's sufficient to show that he did something else that caused the company to lose business, or lose status, or lose credit. If that's sufficient, then you don't really need that element of the statute. You're not putting much content in this, are you, counsel? Well, I mean, I think in a lot of cases, this case is different. In many cases, you know, we have an officer who, for example, looted the company as it's going down. That was Norensberg, the case we cite for the standard of active involvement. Prior to the company's collapse, the family wrote checks to themselves and took money out that could have been used for the produce. Again, it's not, you know, and that's what we went after them for. Again, it wasn't that they themselves didn't pay the produce sellers. It was the reason the company didn't have the money to pay. And in this case, the reason the company couldn't fulfill its obligations under PACA was because of the various fraudulent schemes perpetrated by employees and officers within the company. All he pleaded guilty to was misprision. Is there anything that shows that had this fraud been disclosed at the moment he learned of it, there would have been any difference in this non-payment situation? Well, I think, you know, this fraud, I mean, fraud by its nature is a secret. I mean, we're speculating either way because that's not what happened. But the really, you know, how do you disclose the secret to the government? It's reasonable to assume that it would have stopped. Now, we're not talking about assumptions. We're talking about, you say it's reasonable to assume it would have stopped. If it had stopped at that point, is there still any evidence that this payment would have been made? Uh, I think potentially, certainly we wouldn't be here for this responsibly connected proceeding if he hadn't concealed the fraud, which is what he admitted to in his plea and agreed to continue it, which is what he, the facts he admitted to in his plea agreement. Um, are, are we allowed to consider the allegation that he was, he, he didn't simply conceal the fraud, but he was actively involved in, um, creating it. That's the allegation in the indictment. He didn't plead to it. And a friend on the other side has a, at least an intuitively appealing point that that's just an allegation that hasn't been tested. Right. And that is his argument. And we didn't make much of the indictment in the brief. Uh, he, he does testify. Is there evidence though, outside the indictment, is there evidence of that in this record? No, there is not. Uh, unless there are any further questions. Yes, I have another question. Um, you suggested, I think that causation was not the focus, uh, before the ALJ. And now I think you said that the issue has been raised. Are you suggesting that the causation issue was not raised until the appeal to this court? Yes, that is what I'm suggesting. I don't think it was squarely raised, uh, to the ALJ. And I think, you know, I'm not sure it's raised. Let me say squarely raised. If you strike that adverb. All right. I, I read, I'm sorry, your honor. Yes. I reviewed the briefs below and I, I, it's my opinion that it was not raised. And that's why the opinion that she wrote, uh, reads the way it does. And I would say, uh, you know, I, I, I guess, you know, we didn't raise that issue. I didn't chase it down because it would be arbitrary and capricious if the judicial officer missed, uh, you know, a chunk of evidence in the record. But he, he has no evidence, uh, that the fraud he participated in was not, uh, one of the factors that resulted in the bankruptcy of the company and the 10 years to pay. Well, I thought that was an implicit causation argument. Maybe I'm wrong. The causation argument. Through the connection of my action to the specific charge brought against the company. Uh, yes, the, the judicial officer has defined what the act, what activities resulted in the violations of the PACA. And in this case, uh, the administrative law judge found there were three, the misuse of company funds, the fraud against the government and the fraud against the company itself. Of course he participated in only one of those. So it was the fraud against the government was one of the activities that resulted in the violations of the PACA. On the, um, preservation question before the agency, the fraud, the, the causation question was raised in this court, in the blue brief. Yes. And unless I missed it, you didn't argue forfeiture in your red brief. And so forfeiture arguments are themselves subject to forfeiture. So haven't you forfeited that objection? Yes. Judge Katz says that would be correct. All right. Anything further? Nothing further. Um, um, we would, uh, no, nothing further from me. Thank you, your honor. Thank you, counsel. All right. Counsel for petitioner. Your honors. I have nothing further to add. Um, I would just like to point out, um, again, if the department of agriculture wanted to charge Adams with fraud or fraud on the DOD, or as judge Sentel dealt with a case where they're, they charge the breach of an implied duty with respect to a produce transaction, they could have, but they didn't. It's solely limited to the failure to pay produce suppliers. And there's no causal connection between failure to report the DOD fraud and the failure to pay. Can I just ask one question? Suppose we think there's no connection. Between his individual acts or omissions and the failure to pay. Um, don't you still have a little bit of a problem because the statute doesn't require causation between the individual's misconduct and the violation. It requires that he be actively involved in activities that cause the violation. So, isn't it enough, even if we can't trace what Finberg did to the failure to pay, isn't it enough if the record has substantial evidence that he was involved in the one fraudulent scheme. And that scheme. Was a substantial factor of the government of the companies not being able to pay I think it's different, though, because the way that was couched was you indicated that he was involved in the stack actively involved. No, but you said he was actively involved in the fraud. All he was found get found guilty of and pled guilty to was failure to disclose the fraud. There's no evidence that he was a participant in the fraud. So we have to show. Hey, if he reported this would this have prevented the violation from occurring. And this court in Nuremberg specifically was pretty clear that the legislative history for the amendments in 1995 to the actively involved standard. Was that Congress wanted to make it clear that the Congress wanted to amend the definition of provide that individuals were given the opportunity and I'll quote to demonstrate they were not responsible for the specific violation. In this case, who's defender is not responsible for the failure to pay Adams produce suppliers. That statute reads a little bit more broadly than that. I mean, I guess you, I guess you could say that concealment as a matter of law can't constitute active involvement, but I'm not sure that's right. I can I can conjure up a hypothetical where the concealment would be absolutely critical. Okay, thank you, your honors. Thank you. We'll take the case under advisement.
judges: Rogers, Katsas, Sentelle